UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
EVELYN SONN,

                        Plaintiff,            **MEMORANDUM**
                                                         **AND ORDER**
      - against -

                                                         CV 06-1816 (FB) (JO)

WAL-MART STORES, INC., et al.,

                        Defendants.
-----------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

        Plaintiff Evelyn Sonn ("Sonn") seeks leave to amend her complaint in this personal injury action against Wal-Mart Stores, Inc. ("Wal-Mart") and a Wal-Mart employee whose identity is the subject of the instant motion. *See* Docket Entry ("DE") 13.[1] Specifically, Sonn seeks to substitute all references in her original complaint to the fictitiously-named defendant Diane "Doe" with references to Fran Mahon ("Mahon"), the Wal-Mart employee whom she now believes to have caused her to suffer the injury at issue in this litigation. Because Sonn and Mahon are both citizens of New York, and because the only jurisdictional basis for Wal-Mart's removal of this case to federal court was diversity, *see* 28 U.S.C. § 1332, Sonn further asks that, in the event I grant leave to amend, I thereupon remand the case to the state court in which it was originally filed. DE 13. Wal-Mart opposes the proposed amendment on the ground that Sonn's sole motivation is to destroy diversity. DE 14. As discussed below, I find that Sonn has established legitimate grounds for adding Mahon, and I therefore grant her motion in its entirety.

---

[1] As explained below, this case is related to the file that the Clerk of this court opened when Wal-Mart previously sought, unsuccessfully, to remove Sonn's complaint from the state court in which is was originally filed, *Sonn v. Wal-Mart Stores, Inc.*, CV 06-1296 ("*Sonn I*"). All "DE" references below are to the docket in the instant matter, CV 06-1816, unless otherwise noted.

I.  Background

This is the second time that Wal-Mart has removed this suit to this court and the second time that I have had occasion to consider this court's jurisdiction over the parties' dispute. Sonn first filed her complaint in the Supreme Court of the State of New York, County of Kings, on March 3, 2006, and Wal-Mart, after later being served that complaint, removed the case to this court by means of a notice dated March 22, 2006. *See Sonn I*, DE 1. The following day, I summarily remanded the case on the ground that Wal-Mart had not shown that the amount in controversy exceeded $75,000, and had therefore failed to demonstrate this court's jurisdiction. *See Sonn I*, DE 4, 2006 WL 752929 (E.D.N.Y. Mar. 23, 2006). Wal-Mart subsequently removed the case to this court for a second time after it learned, through the use of discovery procedures available under state law, that Sonn seeks damages in excess of $75,000. *See* DE 1 at 3.

Between the time that I first remanded the case and the time that Wal-Mart filed its second removal notice – and thus, while the action was pending before the state court in which Sonn had initially filed suit – Sonn amended her complaint to join as a defendant the individual Wal-Mart employee who she believed had caused the accident in which she claimed to have been injured. *See* DE 1 at 18-22 (Amended Verified Complaint) ("AVC"). In amending the complaint in state court, Sonn referred to this individual defendant by the fictitious name "Diane 'Doe'" because she then (incorrectly) believed that the individual's first name was Diane, but did not know her last name. *See* AVC; DE 10; DE 15.

Shortly after the case was removed for the second time, I directed the parties to appear at a case management and scheduling conference to discuss, in addition to routine issues, the facts and law relevant to the addition of Diane "Doe" to this suit and information that might help to

identify her. *See* DE 4. At the conference, I directed the parties to address two specific issues in follow-up submissions: the identity of Diane "Doe" and Sonn's motivation for adding her as a defendant in the state court action. *See* DE 7.

The parties' submissions made it clear that there was a factual dispute on the latter point. While Sonn's counsel averred that it had "always" been Sonn's intention to add the Wal-Mart employee as a party defendant, *see* DE 10, Wal-Mart's counsel claimed that Sonn had added "Doe" for the sole purpose of destroying diversity, *see* DE 11. As I noted in an order dated June 9, 2006, in which I declined to take action on the parties' submissions, there was at that time no justiciable controversy before me: the removal statute by its plain terms directs me to ignore the citizenship of fictitiously-named defendants when considering the propriety of removal. *See* DE 12 at 2 (citing 28 U.S.C. § 1447(e)). Anticipating the instant motion, I noted that in the event Sonn moved to amend her complaint to add a real individual with New York citizenship, the issue of her motivation for doing so might become relevant. Sonn has now made such a motion.

II.     Discussion

    A.     Leave To Amend

Pursuant to the removal statute and pertinent case law, in a situation such as this where a plaintiff seeks to join a non-diverse defendant whose addition to the case would "destroy subject matter jurisdiction," the trial court can either allow joinder and remand the action to the state court in which it was filed or deny joinder and retain jurisdiction over the case. *See* 28 U.S.C. § 1447(e). District courts have broad discretion to decide which course of action to take. *See e.g., Briarpatch Ltd., L.P. v. Pate*, 81 F. Supp.2d 509, 515 (S.D.N.Y. 2000).

3

In exercising that discretion, district courts in this circuit first consider whether the proposed joinder satisfies the liberal "same transaction or occurrences" test applicable to the joinder of a new party pursuant to Federal Rule of Civil Procedure 20. *See Nazario v. Deere & Co.*, 295 F. Supp.2d 360, 363 (S.D.N.Y. 2003). While neither party has addressed that issue, I have no doubt that the proposed joinder of Mahon is consistent with Rule 20: the parties' submissions plainly show that Sonn's complaints against Wal-Mart and Mahon, respectively, involve common questions of law or fact. *See id.* (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

The second and more complicated issue is whether allowing the diversity-destroying joinder Sonn requests would "comport with principles of fundamental fairness." *Soto v. Barnitt*, 2000 WL 1206603, *3 (S.D.N.Y. Aug. 23, 2000) (citations and internal quotations omitted). "Towards such a determination, a court generally considers the following four factors: (1) any delay, and the reasons for the delay, in seeking to amend; (2) any resulting prejudice to the defendant; (3) the likelihood of multiple litigation; and (4) the plaintiff's motivation in moving to amend." *Id*. (citing cases); *see also Nazario*, 295 F. Supp.2d at 363.

As to the first factor, it appears that Sonn has known the identity of the proposed additional defendant since June 2, 2006, when Wal-Mart, complying with my earlier order, provided her with Mahon's name. *See* DE 14 at 2. Wal-Mart appears to suggest that Sonn's failure to bring the instant motion for just over two months after it disclosed the information constitutes unreasonable delay. *See id.* at 3 (noting that Sonn's counsel has offered "no reasonable explanation" for not bringing the instant motion sooner). In response, Sonn's counsel has offered what I find to be a reasonable explanation for the two-month delay: she was waiting

to initiate such motion practice until after a mediation hearing that Wal-Mart had scheduled for July 19, 2006. *See* DE 15 at 2. I find that any delay with respect to bringing the instant motion was both minimal and justified. *Cf. Nazario*, 295. F. Supp.2d at 363 (noting that plaintiff's unjustified five-month delay weighed in favor of denying joinder).

Wal-Mart has never suggested that it will suffer any prejudice from the addition of Mahon as a party to this litigation, and I can think of no way in which it would. Indeed, the *only* risk of prejudice to Wal-Mart arising from Sonn's proposed amendment is one that it seems eager to endure. That is, Sonn would presumably be within her rights to commence a separate state court action against Mahon if denied an opportunity to join her to this lawsuit. In such circumstances, however, Wal-Mart would likely bear the burdens of defending both cases, given its acknowledgment (to me, at least) that, if Sonn can prove her allegations, it would bear responsibility for Mahon's actions under a theory of *respondeat superior*. *See* DE 14 at 3. Even if a judgment against Sonn in one case might collaterally estop her in the other, it seems likely that Wal-Mart would incur the costs of litigating both actions until it obtained such a judgment, and would thereafter have to litigate the issue of preclusion in the remaining lawsuit. That possibility suggests not only that the factor of potential prejudice is of no help to Wal-Mart, but also that the consideration of avoiding multiple litigation weighs in favor of permitting the proposed joinder. However, I do not give these factors much weight, because even if Sonn *could* file a separate action against Mahon in state court, I doubt as a practical matter that she *would* do so: such an action would likely increase her own litigation costs without improving her chances of recovery or increasing the fund of money available to pay a judgment or settlement.

5

Wal-Mart relies principally on the final factor – the question of Sonn's subjective motivation – in urging me to deny leave to amend. Wal-Mart asserts that Sonn added Diane "Doe" as a defendant in the state court action solely in effort to destroy diversity jurisdiction and now seeks to replace the fictitious "Doe" with Fran Mahon, an actual individual with non-diverse citizenship, to accomplish that feat. *See* DE 14. Sonn denies Wal-Mart's claims as to her motivation and avers that she always intended to name the Wal-Mart employee whom she now knows is named Fran Mahon as a defendant in this suit. *See* DE 15.

A plaintiff may not defeat diversity jurisdiction, and thus also a defendant's right to remove a case on that basis, merely by seeking to join as a defendant a non-diverse individual who lacks a real connection with the controversy at issue. *See Allied Programs Corp. v. Puritan Ins. Co.*, 592 F. Supp. 1274, 1276 (S.D.N.Y. 1984); *Quinn v. Post*, 262 F.Supp. 598, 602 (S.D.N.Y. 1967) (Weinfeld, J.). Where neither the facts of the case nor the applicable state law provide a possibility of recovery against a named or prospective defendant, joinder of that individual is considered fraudulent and may not serve as the basis for remand. *See id.* (citing cases). Similarly, when considering diversity-destroying motions to amend, courts in this circuit carefully consider any evidence that the plaintiff seeks joinder solely as a means to the end of securing remand of the case to state court. *See*, *e.g.*, *Rosenthal v. Life Fitness Co.*, 977 F. Supp. 597, 601 (E.D.N.Y. 1997). Courts have looked to the timing of the motion, the circumstances of the case, and the likelihood of recovery against the proposed defendant as evidence of the plaintiff's motivation. *See Nazario*, 295 F. Supp.2d at 365 (fact that plaintiff sought joinder only after denial of remand motion considered evidence of diversity-defeating intent); *Rosenthal*, 977

F. Supp. at 601 (where plaintiff has already initiated an action against the proposed defendant in state court, no reason to think joinder is motivated by a desire to defeat diversity).

The analysis of Sonn's motivation is somewhat complicated by the unusual procedural history of this case. Ordinarily, I would simply look to evidence of the plaintiff's motivation with respect to the precise amendment under consideration – which in this case is Sonn's proposal to replace references to the fictitious Diane "Doe" in the pending complaint with references to the real person whom that pseudonym was always intended to connote, Fran Mahon. Under the circumstances, however, such a narrow inquiry would ignore an important fact: namely, that Sonn's original complaint named only Wal-Mart as a defendant and did not seek relief against any individual employee, real or fictitious. Rather, Sonn added "Doe" as a defendant during the brief period that the case was pending in state court in between my earlier remand order and Wal-Mart's second attempt at removal.

As a practical matter, I doubt that Sonn's reason – or, more realistically, that of her counsel – for adding "Diane 'Doe'" to the state complaint was different from her reason for now seeking to replace "Doe" with Mahon. But adding consideration of the earlier amendment into the mix plainly affects my determination of what that subjective intent was in both instances: Sonn's claim to have always had the intent to include the Mahon as a defendant upon identifying her is rendered rather less credible by the fact that her initial complaint reflected no such intent, and by the fact that the first time she took any action with respect to an individual defendant was after Wal-Mart sought to override her choice of forum. For purposes of the following discussion, at least, I am therefore willing to assume that Sonn would not have bothered to sue Mahon if the case had remained in state court, that her decision to amend the complaint in state court was

7

motivated by a desire to ensure that the case would be resolved in that court, and that the instant request for leave to amend is motivated by a desire to achieve the same result.

None of those assumed facts, if true, makes the slightest bit of difference.

If Sonn had singled out Mahon as a potential defendant solely on the basis of her citizenship and without any good-faith belief that she bore any liability, the joinder would be fraudulent. But that is neither what Wal-Mart has asserted nor what it has proved. Instead, it has offered arguments that do no more than assert what I assume to be true: that Sonn is taking advantage of Mahon's alleged role in the accident at issue to enforce her choice of forum, and that she would not do so if Wal-Mart had simply acceded to her desire to proceed in state court. Some of the arguments made in support of that proposition are unpersuasive, as explained below. But the more fundamental error on Wal-Mart's part is in assuming that the proposition, if accepted, would suffice to defeat Sonn's motion. It would not.

An example of an argument that fails even to support the proposition that Sonn's intention was other than she claims is Wal-Mart's observation that, in amending her complaint in the state court action, Sonn gave the fictitious "Doe" defendant the first name of "Diane" rather than "Fran." DE 14 at 3. Sonn's counsel offers a credible explanation for the misnomer in her first complaint. He avers that at the time of that state court amendment, Sonn believed that "Diane" was in fact the first name of the employee whose conduct she believed to have resulted in her injury; he adds that Sonn only learned of her mistake, and of the employee's true first name, during the course of a later visit to the store in which she claims to have been injured. *See* DE 15 at 1-2. It is clear from the submissions in this case that each party has always understood that the accident of which Sonn complains involved only one specific Wal-Mart employee. Moreover,

Sonn did not decide at random to accuse Mahon of being that employee; instead, she used a fictitious name when her information was insufficient to identify Mahon, and then proposed an amendment after Wal-Mart supplied her with the information necessary to do so in good faith. *See* DE 14 at 2; DE 13 at 2.  Thus, to the extent that Wal-Mart seeks to demonstrate Sonn's bad faith by reference to her use of "Diane" as part of the pseudonym she selected in the state court amendment, its argument is completely unpersuasive.

Similarly unpersuasive is Wal-Mart's apparent view that its presumptively deep pocket makes it impossible for Sonn to have had any acceptable reason to sue Mahon.  Wal-Mart argues that it "belies belief" that Sonn had a legitimate motive for seeking to join Mahon because, if Sonn can prove her factual allegations, Wal-Mart will be liable for Mahon's conduct.  DE 14 at 3. As Sonn aptly noted in response, however, there are indeed reasons why she might not be content to seek relief only against Wal-Mart.  Indeed, according to Sonn's counsel, Wal-Mart has itself taken the position – at some point during this litigation, if not in its papers opposing the instant motion – that it bears no liability for Mahon's actions.  DE 15 at 3.  That may or may not be Wal-Mart's current position, but I see no reason to assume that a plaintiff in Sonn's position would want to take the chance that Wal-Mart might ultimately escape liability on a theory that would leave intact the possibility of collecting a judgment, however small, from its less wealthy employee.  Sonn also points to the advantage she secures in seeking pre-trial discovery from Mahon about her role in the alleged accident if the latter is a party and not merely a potential witness.  *See id*.  In short, Sonn does not lack perfectly appropriate reasons why someone in her position might want to join Mahon as a party.

Of course, the fact that a party in Sonn's position might have such reasons does not necessarily mean that those were the reasons that actually motivated her decision to seek an amendment. Those reasons might also be nothing more than *post hoc* rationalizations for a course of action that Sonn has chosen for another reason she does not care to admit. Wal-Mart believes that is exactly what they are, and as evidence points to a statement it ascribes to Sonn's counsel Robert Flaster ("Flaster") that, in Wal-Mart's view, effectively admitted that Sonn's purpose in adding "Doe" as a defendant was to undermine the possibility of federal diversity jurisdiction.

Specifically, on March 17, 2006 (before Wal-Mart first filed a notice of removal in *Sonn I*, but apparently after it served the notice on its adversary), Flaster spoke with Scott Brody ("Brody"), a member of the firm representing Wal-Mart. Wal-Mart does not offer Brody's own description of that conversation; instead, in a letter-brief authored by another attorney (Jonathan Banks), it refers to, and attaches a copy of, a letter that still another attorney at the same firm – Patricia O'Connor ("O'Connor") – wrote to Flaster days after the conversation purporting to describe its contents. According to that hearsay description, Flaster asked Brody to have Wal-Mart withdraw the removal notice and cautioned if Wal-Mart did not do so, Sonn "would simply add a Wal-Mart employee to the action in order to destroy diversity." DE 14 at 1 (letter-brief); *see id*. at 5 (copy of letter dated March 20, 2006, appended to letter-brief). Whether intentionally or not, Wal-Mart's account conveys the suggestion that Flaster threatened to add a New York defendant to destroy diversity regardless of whether that luckless individual had anything to do with Sonn's actual claims.

Flaster provides a direct account of the same conversation that paints a much different picture. He claims that after receiving Wal-Mart's initial notice of removal, he contacted opposing counsel to advise them that Sonn intended to amend her complaint to add as a defendant the Wal-Mart employee whose conduct was at issue and to recommend that Wal-Mart therefore withdraw the removal notice because it would ultimately be a futile procedure. *See* DE 10; DE 13 at 3; DE 15 at 1.

The parties' respective accounts of the conversation are not irreconcilable – the difference is largely a matter of nuance, and the accuracy of Wal-Mart's version may be compromised by Brody's honest misunderstanding of what Flaster was trying to say, by O'Connor's failure to grasp the details of Brody's description of the conversation, or by Banks' mistake about the import of O'Connor's report of that second-hand description. Alternatively, Flaster's account may be sincere, but his recollection of the conversation may have altered over time. If I believed it necessary to make a factual finding about what Flaster actually said, or alternatively to determine the precise contours of Sonn's subjective intent that Flaster purported to convey to Brody in the disputed conversation, I would convene an evidentiary hearing that would necessarily include the testimony of at least three attorneys who represent parties in this case, and possibly others as well. The cross- and redirect-examination of such witnesses might appropriately ask them to reveal communications and attorney work-product that would otherwise be privileged. The possibility highlights the shortcomings of a regime that requires a court to plumb a litigant's subjective motivation for seeking leave to amend her complaint.

Fortunately, no such hearing is necessary. In the best scenario for Wal-Mart, the result of such a hearing would be that I would determine that Sonn's decision to seek leave to join Mahon

as a defendant was motivated by nothing other than a desire to undermine the jurisdictional predicate for Wal-Mart's second removal notice. As noted above, I am willing to assume that to be the case for purposes of this discussion.

The case law that refers to the motivation of a party seeking to amend a pleading in a manner that will destroy diversity jurisdiction does not require the movant to demonstrate that her sole, or even primary, reason for seeking such leave is to achieve a result other than the ability to control the choice of forum. Instead the inquiry is whether the movant has employed unfair means to achieve a result that will give her that control. Moreover, it is not the movant who must eliminate doubt on the matter, but rather the party opposing the joinder who must demonstrate its impropriety. As Judge Weinfeld wrote in circumstances similar to those of this case,

> A joinder may be fraudulent and sham if the allegations in the plaintiffs' pleading with reference to the resident defendants are shown to be so clearly false and fictitious that no factual basis exists for an honest belief on the part of the plaintiff that there is liability – in short, that the joinder is without any reasonable basis in fact and is made without any purpose to prosecute the cause in good faith against them. The burden of proof on the issue is upon the defendants and evidentiary facts must support the charge. They press hard that they have satisfied this burden by the plaintiff's omission to include the resident defendants in the prior suit; by the voluntary dismissal of the original action after it had been removed to this court; by a statement in plaintiffs' brief in support of the voluntary dismissal that 'a plaintiff will be permitted to dismiss the action removed to a federal court notwithstanding that plaintiffs' purpose in so doing is to defeat removal and get the litigation back into the state court'; and, finally, by the strongly worded specific denials by the resident defendants of the commission of or participation in the tortious acts alleged in the complaint. None of these factors singly or in combination sustain the defendants' claim of fraudulent joinder.

*Quinn*, 262 F. Supp. at 603 (footnotes omitted; citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97-98 (1921)).

Discovery in this case – which, based on my resolution of the instant motion will be conducted under the supervision of the state court – may ultimately demonstrate that Mahon had nothing to do with Sonn's injury. But as far as I can determine from the record before me, Sonn did not act in bad faith in alleging otherwise. To the contrary, from the inception of this litigation, Sonn blamed her alleged injury on the actions of a specific Wal-Mart employee who she says caused her to fall, and she only named Mahon as that employee after Wal-Mart gave her information supporting that identification. As a result, the amendment Sonn now proposes – which would assert a completely plausible theory of liability against an individual defendant, regardless of any claim for indemnification that the individual might have against her employer – is neither fraudulent nor in anyway unfair. I therefore grant Sonn the leave she seeks.

A contrary result would not prevent litigants from using procedural mechanisms to seek tactical advantage; it would simply create an artificial and arbitrary test that renders some such stratagems less effective than others. The proof is in the procedural history of this case. After the initial remand, and before Wal-Mart's latest attempt to remove the case, *each* party took advantage of its rights under state law to improve its ability to control the choice of forum: Sonn, acting on the basis of limited information, vindicated her right under state law to amend her complaint to join "Doe" as a defendant, presumably in the hope of later establishing a sufficient factual basis to destroy federal jurisdiction under 28 U.S.C. § 1332; Wal-Mart similarly vindicated its right under state law to force Sonn to disclose the amount in controversy, evidently in the hope of establishing a sufficient factual basis to assert federal jurisdiction under the same law.

Under these circumstances, neither party has an obviously stronger claim to purity of heart. Each sought to control the choice of forum, and both used the available procedural mechanisms in the pursuit of that goal. Moreover, as explained below, Wal-Mart's argument for preferring its motivation over Sonn's requires me to overlook a matter of timing that is at best a fortuity and at worst a cynical manipulation of the discovery process.

If Sonn had been as quick to obtain the most basic discovery from Wal-Mart as Wal-Mart was in getting discovery from Sonn – if, for example, Wal-Mart had complied with the strict letter of Federal Rule of Civil Procedure 26(a)(1)(A) and disclosed Mahon's name immediately upon filing its first removal notice rather than waiting for an order to do so – then Sonn would have been in a position to add Mahon as a defendant *before* Wal-Mart filed its second removal notice, while the case was still pending in state court. Had she done so, Wal-Mart would never have been in a position to file that second notice (because it could not in good faith have alleged the existence of diversity jurisdiction), and this case would have proceeded in state court.

Wal-Mart's opposition to the instant motion thus reduces to the implicit proposition that it can trump a plaintiff's otherwise conclusive right to choose the forum in which to bring her claim so long as it wins the race to obtain information that will support removal before its opponent can obtain information that will avert it. As a matter of logic, that proposition would seem to be equally compelling regardless of whether Wal-Mart won the race by happenstance, by virtue of opposing counsel's inattention or unfamiliarity with applicable law, or worse, by selectively and opportunistically delaying the production of information exclusively within its own control. Endorsing such a rule would assuredly not "comport with principles of fundamental fairness." *Soto*, 2000 WL 1206603, at *3.

B.     Remand And Review Procedures

As explained above, Sonn is entitled to amend her complaint so as to join Fran Mahon as a defendant in lieu of the previously named Diane "Doe." By virtue of that amendment, this court no longer has subject matter jurisdiction, and the action must therefore again be remanded to the Supreme Court of State of New York, Kings County. *See* 28 U.S.C. § 1447(c).

A district court's order to remand an action to state court "is not reviewable on appeal or otherwise ...." *Id*. § 1447(d). However, for the reasons explained below, I will stay the order of remand for a sufficient time to allow Wal-Mart to lodge any objections it may have to this decision with the district judge assigned to this case.

My authority as a magistrate judge to enter an order remanding the case to state court derives from 28 U.S.C. § 636(b)(1)(A). *See Meier v. Premier Wine & Spirits, Inc.*, 371 F. Supp.2d 239, 241-44 (E.D.N.Y. 2005). The same statutory provision that empowers me to enter such an order, however, also allows a district judge to "reconsider any pretrial matter under this subparagraph ... where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a). Courts in other jurisdictions have held that the more specific law pertinent to pretrial orders by magistrate judges controls. As a result, notwithstanding the removal statute's general proscription of appellate or other "review," a district judge may "reconsider" a magistrate judge's remand order if the latter is clearly erroneous or contrary to law. *See, e.g.*, *Robinson v. Cheetah Transp.*, 2006 WL 1453036 (W.D. La. May 17, 2006) (citing cases).

Wal-Mart will be denied the opportunity to seek such reconsideration if the remand I now order takes immediate effect. I therefore stay the order of remand *sua sponte* for a period of time

sufficient for Wal-Mart to file any objections it may have. Under the pertinent rules, a stay until September 19, 2006, will accomplish that purpose. *See* Fed. R. Civ. P. 72(a) (requiring objections to a magistrate judge's order to be filed within 10 days); Fed. R. Civ. P. 6(a) (computation of time). Should Wal-Mart actually pursue such relief, it may of course apply to me or to the district judge for a further stay pending resolution of its objections.

III. Conclusion

For the reasons set forth above, I grant plaintiff Evelyn Sonn's motion to amend her complaint so as to join Fran Mahon as a defendant in lieu of the previously named Diane "Doe." As a result of that amendment, this court no longer has subject matter jurisdiction; I therefore respectfully direct the Clerk to enter an order remanding this case to the Supreme Court of State of New York, Kings County. Finally, in order to afford defendant Wal-Mart sufficient time to file a motion for reconsideration of this order by the assigned district judge, I stay this order until September 19, 2006.

**SO ORDERED.**

Dated: Brooklyn, New York
September 1, 2006

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge